**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELWOOD LEE,**<br>　**Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2528** |
| **OFFSHORE LOGISTICAL &**<br>**TRANSPORT, LLC,**<br>　**Defendant** | **SECTION: "E"** |

## ORDER AND REASONS

Before the court is a motion *in limine* filed by Defendant, Offshore Logistical & Transport, LLC ("Offshore") to exclude or limit the testimony of Plaintiff Elwood Lee's proffered liability expert, Captain J.P. "Patrick" Jamison.[1] Lee opposes this motion.[2]

## BACKGROUND

This is a maritime personal injury case. Lee filed a complaint on July 10, 2015, pursuant to the Jones Act[3] and general maritime law.[4] Lee alleges that on July 20, 2014, while aboard the M/V BALTY, he "experienced an accident" on the stern deck resulting in "serious painful injuries" to his knee and other parts of his body.[5] The M/V BALTY is an offshore supply vessel with a steel deck covered by unpainted, rough deck boards. The vessel transports cargo, which is loaded and stored onto its deck. The parties agree that: (1) the M/V BALTY was owned, operated, and/or controlled by Offshore; (2) Lee was an employee of Offshore at the time of the accident; and (3) Lee was a seaman under the Jones Act at the time of the accident.[6] It is undisputed that Lee, as the senior captain

---

[1] R. Doc. 64.
[2] R. Doc. 69.
[3] 46 U.S.C. § 30104.
[4] R. Doc. 1.
[5] *Id.* at ¶¶ III–V.
[6] *Id.*; R. Doc. 23-4 at 1, ¶ 3; R. Doc. 27-1 at 1, ¶ 3.

aboard the M/V BALTY, was involved in getting "the boat organized" and performed "generalized maintenance."[7] It is undisputed Lee was unaware of a defect that gave him "concern about the ability to walk in [the] area" of the alleged injury.[8] Finally, both parties agree there was no non-skid material on the deck of the M/V BALTY at the time of Lee's injury.[9]

The parties, however, dispute whether Offshore's failure to apply non-skid paint constituted negligence or rendered the M/V BALTY unseaworthy[10] and whether the lack of non-skid paint contributed to Lee's injuries.[11] Lee contends Offshore had the duty to ensure there was a non-skid application on the deck, but Offshore asserts that Lee, as the vessel's captain, bears this duty. To support his position, Lee sought Captain Jamison's expert opinion on these issues.

On November 14, 2017, Offshore filed the instant motion *in limine* to exclude or limit Captain Jamison's testimony at trial.[12] On November 21, 2017, Lee timely filed his opposition.[13]

## STANDARD OF LAW

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as "the testimony is based upon sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of

---

[7] R. Doc. 23-2 at 7.
[8] *Id.* at 20.
[9] *Id.* at 17–18.
[10] R. Doc. 23-4 at 3, ¶ 14; R. Doc. 27-1 at 2, ¶ 14.
[11] R. Doc. 23-4 at 4, ¶¶ 28–29; R. Doc. 27-1 at 3, ¶¶ 28–29.
[12] R. Doc. 64.
[13] R. Doc. 69.

the case."[14] The threshold inquiry is whether the expert possesses the requisite qualifications to render an opinion on a particular subject matter.[15] If the expert's qualifications are found to be sufficient, the court then must examine whether the expert's opinions are reliable and relevant.[16] The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[17] provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary assessment of whether the expert's testimony is relevant and reliable.[18]

The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[19] The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[20] In *Daubert*, the Supreme Court enumerated several non-exclusive factors that courts may consider in evaluating the reliability of expert testimony.[21] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence

---

[14] FED. R. EVID. 702.
[15] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 799 (E.D. La. 2011). *See also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert to testify if it finds that the witness is not qualified to testify in a particular field or a given subject.").
[16] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).
[17] 509 U.S. 579 (1993).
[18] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[19] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[20] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[21] *Daubert*, 509 U.S. at 592–96.

and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[22]

The Supreme Court has cautioned that the reliability analysis must remain flexible. Various *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[23] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[24] In sum, the district court is offered broad latitude in making expert testimony determinations.[25]

"In addition to reliability, *Daubert* requires that expert testimony be relevant."[26] Under *Daubert*, expert testimony is relevant only if it assists the trier of fact in understanding the evidence.[27] Expert testimony should be excluded if the court finds that "the jury could adeptly assess [the] situation using only their common sense experience and knowledge."[28]

## DISCUSSION

Offshore seeks to limit or exclude Captain Jamison's testimony at trial.[29] Offshore argues Captain Jamison "is (1) not qualified to address the liability issues on negligence or the seaworthiness of the offshore supply vessel involved in this suit, and (2) his opinion is not admissible under the *Daubert* standards."[30]

---

[22] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[23] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[24] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[25] *See, e.g., Kumho Tire*, 526 U.S. at 151–53.
[26] *Howard v. Cal Dive Intern., Inc.*, No. , 2011 WL 63873, at *2 (E.D. La. Jan. 6, 2011).
[27] *Daubert*, 509 U.S. at 591.
[28] *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).
[29] R. Doc. 64.
[30] R. Doc. 64-1 at 5.

In support of its motion, Offshore attached Captain Jamison's expert report.[31] In his report, Captain Jamison offers five opinions.[32] Offshore argues, and Lee does not dispute, that the opinions offered by Captain Jamison in items three through five of his report are not relevant to the analysis of Offshore's alleged negligence or the seaworthiness of the M/V BALTY.[33] Thus, the Court will consider only Captain Jamison's qualifications to render the opinions in items one and two of his report. These opinions focus on the application of non-skid paint on the wooden deck boards of the M/V BALTY.

A. Captain Jamison's Qualifications

Offshore first argues this Court should limit or exclude Captain Jamison's testimony at trial because he is not qualified to address whether Offshore was negligent or whether the M/V BALTY was unseaworthy.[34] It argues that, although Captain Jamison has extensive experience with tugboats, towboats, and push boats, all inland vessels, he is not qualified to offer an opinion on an offshore supply vessel, such as the M/V BALTY.[35] Offshore points out that, of all the credentials listed in Captain Jamison's resume, not one addresses any qualifications regarding an offshore supply vessel. Additionally, looking to Captain Jamison's expert report, Offshore points out that Captain Jamison states his "areas of work include the Illinois River, the Upper and Lower Mississippi Rivers, the Ohio River, the Missouri River and the East and West Inter Coastal Waterways at New Orleans, LA."

Offshore submits that the relevant differences between inland vessels and offshore vessels render Captain Jamison's experience with inland vessels inapplicable to an

---

[31] R. Doc. 64-5.
[32] *Id.* at 2−3.
[33] R. Doc. 69 at 12−13.
[34] R. Doc. 64-1 at 14.
[35] *Id.* at 14, 17−18.

offshore vessel such as the M/V BALTY.[36] For example, in his deposition testimony, Captain Jamison admitted he has worked only on inland waterways with tugboats, towboats, and push boats, all of which had metal decks and were not meant to carry cargo on the deck.[37] He admitted he was not familiar with the kind of friction rough deck boards, such as the deck boards on the M/V BALTY, have and whether such boards could provide a safe walking surface without non-skid paint.[38] He admitted he had not been aboard the M/V BALTY,[39] nor had he seen photos of the vessel.[40] Further, Captain Jamison admitted he was unfamiliar with the current regulations governing the decks of offshore supply vessels.[41] Finally, in his report, Captain Jamison erroneously referred to the M/V BALTY as "a non-inspected vessel," despite the M/V BALTY having been inspected by the U.S. Coast Guard and operating under the Certificate of Inspection issued by the Coast Guard.[42]

In response, Lee argues Captain Jamison is a licensed Any Gross Ton Master and has worked in the marine industry since 1957.[43] Plaintiff further argues Captain Jamison has over fifty years of experience in the marine industry, including serving as an expert witness in cases involving offshore supply vessels.[44] Plaintiff asserts that, given Captain Jamison's several years of experience in the marine industry generally, Offshore's contention that the differences between river vessels and offshore supply vessels is "far better addressed through cross-examination than a motion *in limine*."[45]

---

[36] *Id.* at 17–18.
[37] R. Doc. 64-6 at 12.
[38] *Id.* at 46.
[39] *Id.* at 17.
[40] *Id.*
[41] *Id.* at 20.
[42] R. Doc. 64-1 at 5.
[43] R. Doc. 69-2 at 4.
[44] R. Doc. 69-3 at 2; R. Doc. 69 at 11.
[45] R. Doc. 69 at 10–11.

The Court finds Captain Jamison is not qualified by education or experience to testify whether Offshore was negligent or whether the M/V BALTY was unseaworthy. Although Captain Jamison has been *offered* as an expert on offshore vessels in the past, he has never been *accepted* as an expert regarding offshore supply vessels. Notably, each of the cases in which Captain Jamison was offered as an offshore expert settled before trial, without a challenge to Captain Jamison's credentials and without a ruling on his qualifications. Captain Jamison's training and experience is limited to rivers and inland waterways and does not include bodies of water on which an offshore vessel primarily operates. He has not worked on an offshore supply vessel or received training related to offshore supply vessels. Further, in his report, Captain Jamison did not consider the M/V BALTY's U.S. Coast Guard's Certificate of Inspection, certifying the M/V BALTY is a vessel fit for the service for which it was inspected, which for the M/V BALTY is carrying cargo on the Gulf of Mexico. He did not consider, and admitted he was not aware of, the regulations regarding the design, construction, and operation of offshore vessels, including their decks. Thus, the Court finds Captain Jamison is not qualified by his training or experience to address liability issues on negligence or the seaworthiness of the M/V BALTY.

B.  Whether Captain Jamison's opinions are relevant and reliable

Even assuming Captain Jamison were qualified to render an expert opinion on the seaworthiness of the M/V BALTY or Offshore's alleged negligence, the opinions rendered in items one and two of his expert report "intrude on the domain of common sense matters upon which jurors require no expert assistance." [46]

---

[46] *Jones v. H.W.C. Ltd.*, No. 01-3818, 2003 WL 42146, at *3 (E.D. La. Jan. 3, 2003); *see also Peters*, 898 F.2d at 450.

Expert testimony is relevant under *Daubert* if it assists the trier of fact in understanding the evidence. [47] Expert testimony does not assist the trier of fact if the court finds "the jury adeptly [can] assess [the] situation using only their common experience and knowledge." [48] "[S]everal courts in the Eastern District of Louisiana have found that no expertise was required to assist the jury in determining liability for accidents occurring offshore." [49]

For example, in *Peters v. Five Star Marine Service*, the Fifth Circuit considered the admissibility of expert testimony regarding the responsibilities of the master and crew in offloading procedures, the obligation to keep the deck clean of fuel, and the need to store cargo properly. [50] The Fifth Circuit found that the proffered expert testimony would not assist the jury in assessing whether the cargo was improperly stowed, whether it was reasonable for the plaintiff's employer to offload the vessel during heavy seas, and whether diesel fuel made the boat deck slippery, given that these opinions derived from common sense. [51]

Similarly, in *Matherne v. MISR Shipping Co.*, this Court excluded the plaintiff's expert, finding that the expert's opinion would intrude on the province of the jury. [52] In *Matherne*, the plaintiff slipped when he attempted to board the vessel. [53] The plaintiff's expert sought "to testify concerning various conditions on December 23 and 24, 1985, including the safety of the means of ingress and egress from the M/V ALEXANDRIA as

---

[47] *Daubert*, 509 U.S. at 591.
[48] *Peters*, 898 F.2d at 450.
[49] *Howard v. Cal. Dive Int'l, Inc.*, No. 09-6265, 2011 WL 63873, at *3 (E.D. La. Jan. 6, 2011).
[50] *Id.* at 499.
[51] *Id.* at 450.
[52] No. 88-2261, 1991 WL 99426, at *1 (E.D. La. May 31, 1991).
[53] *Id.*

well as other matters of an expert nature concerning the vessel and its appurtenances."[54] In granting the defendant's motion to exclude the plaintiff's expert, the Court reasoned that "[i]t is apparent that what the factfinder must determine in terms of liability is whether or not the plaintiff actually fell and if so, what caused him to fall," and finding that "[a] jury is competent to determine such liability issues and a 'safety expert' would not assist the jury in making such a determination."[55]

Finally, in *Araujo v. Treasure Chest Casino, L.L.C.*,[56] this Court excluded the plaintiff's expert, finding that his opinion was not relevant. In *Araujo*, the plaintiff fell off a ladder on the defendant's vessel, sustaining injuries.[57] The plaintiff sought to introduce expert testimony detailing the defendant's failure to provide safe equipment.[58] Although the proffered expert relied on safety regulations and the defendant's safety manual, the Court found the expert testimony was not helpful to the jury because it "relate[d] to issues within the common knowledge, experience, and understanding of the average lay juror."[59]

Like the proffered experts in *Peters*, *Matherne*, and *Araujo*, Captain Jamison seeks to testify regarding "issues within the common knowledge, experience, and understanding of the average lay juror."[60] No expertise is required to determine whether the lack of non-slip paint "increase[s] the chances of a slip or twisting of the knee,"[61] given that such testimony does not involve any scientific or technical procedures that are

---

[54] *Id.*
[55] *Id.*
[56] No. 97–3043, 1999 WL 219771, at *2 (E.D. La. Apr. 14, 1999).
[57] *Id.* at *1.
[58] *Id.* at *2.
[59] *Id.*
[60] *Id.*
[61] *Id.*

unknown to the jury. Because Captain Jamison's testimony will not be helpful to the jury,

his opinions are not relevant. [62]

Accordingly;

**CONCLUSION**

**IT IS ORDERED** that Defendant's motion *in limine*[63] is **GRANTED**.

**New Orleans, Louisiana, this 19th day of December, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[62] *See Peters*, 898 F.2d at 450.
[63] R. Doc. 64.